# Order

Michigan Supreme Court
Lansing, Michigan

November 16, 2018

157265

LINDSEY PATRICK and
CHRISTIAN PATRICK,
        Plaintiffs-Appellees,
v

VIRGINIA B. TURKELSON,
      Defendant-Appellant,
and

AUTO-OWNERS INSURANCE COMPANY
and CITIZENS INSURANCE COMPANY
OF THE MIDWEST,
        Defendants-Appellees,
and

HOME-OWNERS INSURANCE COMPANY,
        Defendant.
_____/

SC: 157265
COA: 336061
Kent CC: 15-006324-NI

Stephen J. Markman,
*Chief Justice*

Brian K. Zahra
Bridget M. McCormack
David F. Viviano
Richard H. Bernstein
Kurtis T. Wilder
Elizabeth T. Clement,
*Justices*

On order of the Court, the application for leave to appeal the January 16, 2018 judgment of the Court of Appeals is considered, and it is DENIED, because we are not persuaded that the questions presented should now be reviewed by this Court.

MARKMAN, C.J. (*dissenting*).

I respectfully dissent from this Court's order denying leave to appeal. Rather, I would grant leave to appeal to hear defendant's argument that this Court should reconsider both *McCormick v Carrier*, 487 Mich 180 (2010), and *Kreiner v Fischer*, 471 Mich 109 (2004), the latter of which was overruled by the former.

Plaintiff seeks to recover noneconomic damages arising from injuries sustained when her automobile was struck by an automobile operated by defendant. The trial court granted defendant's motion for summary disposition on the basis that plaintiff did not suffer a "serious impairment of body function." But the Court of Appeals reversed and held that questions of fact existed regarding whether plaintiff had suffered a serious impairment of body function. *Patrick v Turkelson*, 322 Mich App 595 (2018).

MCL 500.3135(1) provides:

> A person remains subject to tort liability for noneconomic loss caused by his or her ownership, maintenance, or use of a motor vehicle only if the injured person has suffered death, serious impairment of body function, or permanent serious disfigurement.

MCL 500.3135(5) defines "serious impairment of body function" as an "objectively manifested impairment of an important body function that affects the person's general ability to lead his or her normal life." *Kreiner*, 471 Mich at 131, held that "[a]lthough some aspects of a plaintiff's entire normal life may be interrupted by the impairment, if, despite those impingements, the course or trajectory of the plaintiff's normal life has not been affected, then the plaintiff's 'general ability' to lead his normal life has not been affected and he does not meet the 'serious impairment of body function' threshold." It also held that the impairment must be "objectively manifested"; "[s]ubjective complaints that are not medically documented are insufficient." *Id*. at 132. *McCormick*, 487 Mich at 201, however, overruled *Kreiner* and held that an impairment affects a person's general ability to lead his or her normal life where the impairment "influence[s] some of the person's power or skill, i.e., the person's capacity, to lead a normal life." In addition, a plaintiff need only show that "some of the person's *ability* to live in his or her normal manner of living has been affected, not that some of the person's normal manner of living has itself been affected." *Id*. at 202. Finally, *McCormick* held that "the common meaning of 'objectively manifested' in MCL 500.3135(7) is an impairment that is evidenced by actual symptoms or conditions that someone other than the injured person would observe or perceive as impairing a body function." *Id*. at 196.

Plaintiff claims that the side airbag, which deployed and hit her left ear, has caused her to suffer hearing loss and tinnitus. Testing showed that her hearing was mostly within normal limits, but with a mild loss at high frequencies. Her doctor testified that this could be corrected with a hearing aid, but that the loss is so minor that most people in plaintiff's position would not find a hearing aid worth the expense. Her doctor also testified that there are no objective findings to verify the existence of tinnitus because it is a "phantom" sound, but that it could conceivably have been caused by airbags. Plaintiff testified that the tinnitus has had a negative impact on her ability to work because her job requires her to spend a significant amount of time driving and the road noise makes the ringing in her ears worse. Before the accident, she worked about 30 hours a week, but now she works only about 8 hours a week. Plaintiff admitted, however, that this is partially attributable to the fact that she had a second child after the accident. She also testified that before the accident she enjoyed kayaking, hiking, and attending concerts, but she does not enjoy these activities anymore because of the tinnitus. She further testified that her ear problems have affected her ability to care for her children because she is less patient, more irritable, and more anxious. Her husband testified that they have experienced difficulties communicating since the accident and that she sometimes tells him that she cannot hear him.

At least arguably, plaintiff has not suffered a "serious impairment of body function" under *Kreiner*. There is no objective evidence that she suffers from tinnitus or indeed that she has suffered any significant hearing loss. Furthermore, even assuming that there is objective evidence of these conditions, they do not appear to affect plaintiff's

"general ability to lead her normal life" under *Kreiner*. Her doctor testified that the hearing loss is "minor" and could be corrected by a hearing aid. The tinnitus, while understandably highly irritating, has, again at least arguably, not prevented plaintiff from generally leading her normal life. She takes care of her two children and although she does not work very much anymore, this appears to be mostly a function of the fact that she has chosen to stay home more to care for her children. The fact that she does not kayak, hike, or attend concerts as much may or may not affect her "general ability to lead her normal life," for she has never testified that any of these things constituted a major part of her preaccident life. Under *Kreiner*, therefore, plaintiff arguably has not suffered a "serious impairment of body function." Under *McCormick*, however, plaintiff has, perhaps more certainly, suffered a "serious impairment of body function." Plaintiff's husband testified that she sometimes cannot hear him, which would arguably satisfy *McCormick*'s "objective" requirement, i.e., a third person observing her impairment. In addition, again perhaps more certainly, some of plaintiff's ability to live her normal life has been affected because she no longer kayaks, hikes, or attends concerts.

Plaintiff thus more certainly satisfies the no-fault act's "serious impairment" threshold for tort liability as construed by *McCormick* than she satisfies the same threshold as construed by *Kreiner*. Therefore, this would seem to be an appropriate case in which to assess both *McCormick* and *Kreiner*, which set very different standards for tort liability, and to determine which of these standards is most compatible with MCL 500.3135. Accordingly, I would grant leave to appeal.

ZAHRA, J., would grant leave to appeal.

BERNSTEIN, J., did not participate because he has a family member with an interest that could be affected by the proceeding



I, Larry S. Royster, Clerk of the Michigan Supreme Court, certify that the foregoing is a true and complete copy of the order entered at the direction of the Court.

November 16, 2018



Clerk

a1105